UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAQUEL STOCKDALE,<br>　　　　Plaintiff,<br>　　v.<br>NANCY A. BERRYHILL,<br>　　　　Defendant. | Case No. 18-cv-04561-SVK<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 19, 22, 23 |

Plaintiff Raquel Anna Stockdale ("Plaintiff") seeks review of a final decision of Defendant Acting Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits under Title II of the Social Security Act. Plaintiff presents four issues for review: (1) whether the Administrative Law Judge ("ALJ") properly evaluated the opinions of the treating physician and two state agency physicians; (2) whether the ALJ properly evaluated Plaintiff's testimony; (3) whether the ALJ properly evaluated Plaintiff's boyfriend's testimony; and (4) whether substantial evidence supports the ALJ's decision under Step 4 and Step 5. ECF 19 ("Pl. MSJ"). Plaintiff further contends that each error undermines the ALJ's ultimate findings that Plaintiff has not been under a disability within the meaning of the Social Security Act from July 2, 2013, through the date of last insured. *Id.* As a result, Plaintiff asks this Court to reverse the ALJ's decision and award benefits. *Id.* at 21. Before the Court are the Parties' cross-motions for summary judgment. *Id.*; ECF 22 ("Def. MSJ"); ECF 23 ("Pl. Reply").

////

////

Having considered the cross-motions for summary judgment, the relevant law and the record in this case,[1] the Court finds that the ALJ failed to provide sufficient reasons for rejecting a portion of Plaintiff's treating physician's testimony as well as portions of the state agency psychological consultants' opinions. The Court therefore **GRANTS** Plaintiff's motion for summary judgment, **DENIES** the Commissioner's cross-motion for summary judgment and remands this matter for further administrative proceedings consistent with this opinion.

**I.    PROCEDURAL BACKGROUND**

On November 5, 2014, Plaintiff filed a Title II application for disability benefits with an alleged onset date of July 2, 2013. Administrative Record ("AR") at 15. Plaintiff was 49 years old on the date last insured. AR 25. She has at least a high school education and can communicate in English. *Id.* Plaintiff previously worked several jobs such as a disease management assistant, patient account representative, health services associate, cashier, radiology assistant, office manager, administrative assistant and medical receptionist. AR 241–48. She suffers from a combination of impairments including but not limited to affective disorder, anxiety disorder, post-traumatic stress disorder ("PTSD"), anemia and irritable bowel syndrome. AR 18.

After Plaintiff's claims were denied initially and again upon reconsideration, Plaintiff requested a hearing before an ALJ. AR 124–25. ALJ Cheryl Tompkin held a hearing on December 21, 2016, at which Plaintiff, who was represented by her attorneys, testified. AR 36–78. A vocational expert also testified. *Id.* On June 1, 2017, the ALJ issued a decision finding that Plaintiff has not been under a disability as defined in the Social Security Act from the alleged onset date of July 2, 2013, through June 30, 2016, the last date insured. AR 15–27. The Appeals Council denied Plaintiff's request for review on May 24, 2018. AR 1–6.

On July 27, 2018, Plaintiff filed a timely civil action in this Court. ECF 1. All the Parties have consented to the jurisdiction of a magistrate judge. ECF 8; ECF 10.

////

////

---

[1] This matter was submitted without oral argument pursuant to Civil Local Rule 16-5.

## II. LEGAL STANDARDS

### A. Standard of Review

This Court has the authority to review the Commissioner's decision to deny disability benefits, but "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015); *see also* 42 U.S.C. § 405(g). Federal courts "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Brown-Hunter*, 806 F.3d at 492 (citation and internal quotation marks omitted).

The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based on the application of improper legal standards. *Id.* "Substantial evidence" means more than a mere scintilla but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015) (citations and internal quotation marks omitted). The Court "must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* (citation omitted). Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's findings if supported by inferences reasonably drawn from the record. *Id.*

Even if the ALJ commits a legal error, the ALJ's decision will be upheld if the error is harmless. *Brown-Hunter*, 806 F.3d at 492. But "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Id.* The Court is instead "constrained to review the reasons the ALJ asserts." *Id.* (citation omitted).

### B. Standard for Eligibility for Disability Benefits

Disability benefits are available under Title II of the Social Security Act when an eligible claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ must employ a five-step sequential analysis, determining (1) whether the claimant is doing substantial gainful activity;

(2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments that has lasted for more than 12 months; (3) whether the impairment meets or equals one of the listings in the regulations; (4) whether, given the claimant's residual functional capacity (i.e., what a claimant can still do despite her limitations), the claimant can still do her past relevant work; and (5) whether the claimant can make an adjustment to other work. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 and n.5 (9th Cir. 2014). The burden of proof is on the claimant at Steps 1 through 4 but shifts to the Commissioner at Step 5. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

### III. DISCUSSION

The ALJ employed the established five-step framework for evaluating disability claims as set forth below. It is the ALJ's findings in Step 4 and the resulting conclusions in Steps 4 and 5 which are the subject of the pending motions.

- **Step 1:** The ALJ found that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of July 2, 2013, through her date of last insured of June 30, 2016. AR 17.
- **Step 2:** The ALJ concluded that Plaintiff has the following severe impairments: affective disorder, anxiety disorder, PTSD, anemia and irritable bowel syndrome (20 C.F.R. § 404.1520(c)). AR 18. The ALJ also found that Plaintiff's seizure disorder (*id.*); gastroesophageal reflux disease, intermenstrual bleeding, vitamin B12 deficiency and hypoglycemia (*id.*); neck, back and hip pain (AR 18–19); restless leg syndrome (AR 19); attention deficit disorder (*id.*); and cervical bone spurs (*id.*) were non-severe through the date last insured.
- **Step 3:** The ALJ held that through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d), 404.1525 and 404.1526). AR 19.
- **Step 4:** The ALJ determined that Plaintiff has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following limitations: the individual

could lift 20 pounds occasionally and 10 pounds frequently; could stand or walk 4 hours and sit for 6 hours in an 8-hour workday; could occasionally climb ramps and stairs; occasionally balance; occasionally stoop and kneel; could rarely climb ladders, ropes or scaffolds; the individual should avoid concentrated exposure to workplace hazards such as heights and hazardous machinery; the individual could work in proximity to others but with only occasional contact with others; and the individual should not perform tandem jobs requiring cooperation with other workers to complete the tasks.  AR 21.

- **Step 5:** The ALJ found that Plaintiff was able to perform her past work as a medical biller. AR 25.  The ALJ also made alternative findings under Step 5, concluding that considering Plaintiff's age, education, work experience and residual functional capacity, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. AR 26.  In particular, the ALJ adopted the testimony of the vocational expert and found that Plaintiff could perform the requirements of a medical transcriber, marker, inspector/hand packager and mail clerk.  *Id.*

Plaintiff asserts that the ALJ made four errors that warrant reversal:  (1) the ALJ improperly rejected the opinions of Plaintiff's treating physician, Dr. Anita Heart, and two of the state agency physicians, Drs. Paula Kresser and C.W. Kang; (2) the ALJ improperly discredited Plaintiff's testimony; (3) the ALJ improperly discounted Plaintiff's boyfriend's testimony; and (4) the ALJ failed to support her opinion in Steps 4 and 5 with substantial evidence.  ECF 19 at 10–20.

### A. Physician Testimony

Plaintiff argues that the ALJ improperly disregarded the findings of Dr. Heart, Dr. Kresser and Dr. Kang.  ECF 19 at 10–13.  Plaintiff contends that these opinions establish that she could not sustain even sedentary work on a regular and continuing basis and that the ALJ failed to support her rejection of these opinions with clear and convincing reasons.  *Id.* at 12.

////

////

////

5

### 1. The ALJ's Analysis of the Physicians' Opinions

#### A. Dr. Heart

Dr. Heart has treated Plaintiff since March 2013, and on September 2, 2015, Dr. Heart authored an assessment of Plaintiff's diagnoses and functional limitations. AR 487–90. Dr. Heart diagnosed Plaintiff with PTSD, depression, anxiety, anemia, vitamin B12 deficiency and arthritis. AR 487. The ALJ gave "partial weight" to Dr. Heart's evaluation. AR 24. Specifically, the ALJ "assign[ed] significant weight to Dr. Heart's standing, lifting, carrying, and postural limitations because they are generally consistent with the opinions of the State agency medical consultants and the evidence as whole." *Id.* In contrast, the ALJ assigned "little weight" to the "remainder of [Dr. Heart's] limitations because they were overly reliant on the claimant's subjective reports, not consistent with treatment records, and were not based on a longitudinal treatment history." *Id.* The ALJ did not identify which specific limitations she discounted (*id.*); however, the remaining limitations in Dr. Heart's evaluation are (1) Plaintiff's pain or other symptoms "[c]onstantly" interfere with the attention and concentration needed to perform simple work tasks; (2) Plaintiff's limitations regarding her neck pain and movement; and (3) Plaintiff is likely to miss more than four days of work per a month because of her impairments or treatment. AR 488–90.[2]

#### B. Dr. Kresser and Dr. Kang

Dr. Kresser, a state agency psychological consultant, found that Plaintiff has no significant mental functioning limitations except for moderate limitations in her abilities in four areas: (1) carrying out detailed instructions; (2) maintaining attention and concentration for extended periods; (3) performing activities within a schedule, maintaining regular attendance and being punctual within customary tolerances; and (4) completing a normal workday and workweek without interruptions and performing at a consistent pace without an unreasonable number and length of rest periods. AR 90–91. Another state agency psychological consultant, Dr. Kang, reviewed these findings and concurred. AR 101; AR 105–06.

---

[2] Dr. Heart also opined that Plaintiff would need to take unscheduled breaks during an eight-hour workday. AR 489. However, Dr. Heart failed to quantify how many breaks Plaintiff would need or provide any details regarding this limitation. *Id.* As a result, the Court does not address this finding.

The ALJ assigned "partial weight" to the Dr. Kresser and Dr. Kang opinions that she addressed. AR 23. The ALJ gave "significant weight" to Dr. Kresser's and Dr. Kang's findings that Plaintiff has "no significant limitations in most areas of mental functioning because these findings are consistent with the claimant's conservative treatment and daily activities." AR 23–24. However, the ALJ gave "little weight" to their opinions that Plaintiff has "moderate limitations in her concentration, persistence, and pace."[3] AR 24. Together these findings only account for a portion of Dr. Kresser's and Dr. Kang's opinions. The ALJ failed to address at least two of the moderate limitations identified by Drs. Kresser and Kang—Plaintiff's ability to (1) carry out detailed instructions; and (2) perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances.

### 2. Legal Background

The Ninth Circuit distinguishes between the opinions of physicians based on three categories: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The Court gives more weight to the opinions of physicians who treat the claimant than to the opinions of those who do not. *Id.* The opinion of an examining physician likewise warrants greater weight than the opinion of a nonexamining physician. *Id.*

An ALJ may only "disregard the opinion of a treating physician" after providing "clear and convincing reasons for doing so if the treating physician's opinion is not contradicted by another doctor." *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991) (citation and internal quotation marks omitted). When another physician's findings conflict with the treating physician's opinion the ALJ must state "'specific and legitimate reasons' supported by substantial evidence in the

---

[3] Although the ALJ addressed Plaintiff's "concentration, persistence, and pace" limitations (AR 24), these limitations do not track the language used by Drs. Kresser and Kang, who did not address persistence and separated concentration and pace into different categories (AR 90–91; AR 105–06). This makes it difficult to determine the extent to which the ALJ addressed those categories. As a result, the Court's order focuses on the two categories of limitations identified by Dr. Kresser and Dr. Kang that the ALJ failed to acknowledge completely. However, on remand, the ALJ is to ensure that she addresses all of the moderate limitations identified by Dr. Kresser and Dr. Kang. *See* Section III(D), *infra*.

7

record for" rejecting the treating physician's opinion. *Lester*, 81 F.3d at 830 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983)). The same standards apply to the ALJ's consideration and rejection of an examining physician's opinion. *Id.* at 830–31 (citations omitted).

An ALJ must also consider the opinions of state agency medical or psychological consultants because they "are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. § 416.913a(b)(1). Their findings and the findings of other "nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings." *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (citation omitted). But their opinions "should be discounted and [are] not substantial evidence when contradicted by all other evidence in the record." *Gallant v. Heckler*, 753 F.2d 1450, 1454 (9th Cir. 1984) (quoting *Millner v. Schweiker*, 725 F.2d 243, 245 (4th Cir.1984)) (internal quotation marks omitted). Thus, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 831.

### 3. The ALJ's Partial Rejection of Dr. Heart's Testimony

Plaintiff contends that the ALJ failed to provide sufficient reasons for giving Dr. Heart's opinion partial weight. ECF 19 at 10–12. As noted above, the ALJ assigned "little weight" to the three remaining limitations identified by Dr. Heart (AR 24): (1) Plaintiff's pain or other symptoms "[c]onstantly" interfere with her attention and concentration; (2) Plaintiff's neck pain and movement limitations; and (3) Plaintiff is likely to miss more than four days of work per a month. AR 488–90. The ALJ supported her rejection of the first two findings with clear and convincing reasons supported by substantial evidence in the record. The clear and convincing reasons standard applies because no other physician opinion contradicts Dr. Heart's findings regarding these limitations. *See Baxter*, 923 F.2d at 1396. However, substantial evidence does not support the ALJ's decision to give the third finding regarding Plaintiff's attendance limitations little weight because the ALJ failed to address this finding.

////

////

8

### a. Plaintiff's Attention and Concentration Limitations

While the ALJ did not specify what medical evidence is inconsistent with Dr. Heart's findings regarding Plaintiff's constant attention and concentration limitations, the ALJ previously assessed the medical evidence regarding Plaintiff's ability to concentrate, persist or maintain pace under Step 3. AR 20. There, the ALJ concluded that Plaintiff "had mild limitations" in her attention and concentration abilities. *Id.* The ALJ supported this finding by noting that "[f]ormal testing showed that the claimant had intact attention and could respond appropriately to questions." *Id.* (citing AR 333; AR 506). The ALJ also found that Plaintiff's daily activities such as caring for her pets, preparing meals, going online, looking for jobs, shopping, completing household chores and completing word searches "do not allow finding more than mild limitations in the claimant's ability to concentrate, persist, and maintain pace." *Id.* (citing AR 233; AR 256; AR 259). Although Plaintiff points to some isolated findings in the record that suggest more significant limitations (ECF 19 at 13 (citing AR 488; AR 514)), other portions of the record support the ALJ's conclusion (AR 330 (noting that Plaintiff has not had "mental clouding"); AR 333 (observing that Plaintiff was "alert" with "intact attention"); AR 477 (finding that Plaintiff's attention was "intact"); AR 506 (noting that Plaintiff was "alert, attentive" and "[a]ppropriately conversant and responsive"). Accordingly, substantial evidence supports the ALJ's decision that Dr. Heart's opinion regarding Plaintiff's attention and concentration limits is "not consistent with treatment records." AR 24; *See Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995*)* (noting that a court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation").

Plaintiff also contends that the ALJ cited no evidence that shows Dr. Heart has taken on an improper role as an advocate or relied too heavily on Plaintiff's subjective reports. ECF 19 at 11. Plaintiff's argument mischaracterizes the ALJ's findings. The ALJ noted that Dr. Heart's evaluation assesses Plaintiff's limitations prior to when she began treating Plaintiff, "which suggests that her limitations were relying on the claimant's self-reports rather than a thorough review of the claimant's medical record." AR 24. This finding relates to Dr. Heart's lack of firsthand knowledge of Plaintiff's limitations prior to when she began treating Plaintiff; nowhere

9

did the ALJ suggest that Dr. Heart was biased. Further, the inconsistencies between Dr. Heart's findings and the treatment records support the ALJ's assumption that Dr. Heart's pre-treatment assessment relied on Plaintiff's self-reporting and not the medical record. Dr. Heart's evaluation provides no facts to rebut the ALJ's assumption because Dr. Heart fails to identify what medical records she reviewed in preparing her evaluation. The Court thus rejects Plaintiff's argument that the ALJ failed to support her statement regarding Dr. Heart's reliance on Plaintiff's self-reporting.

### b. Plaintiff's Neck Pain and Movement Limitations

The ALJ provided clear and convincing reasons for rejecting Dr. Heart's findings regarding Plaintiff's neck pain and movement limitations. Again, the ALJ found that the medical evidence does not support Dr. Heart's findings. AR 24. The ALJ specifically noted that Dr. Heart's "treatment notes show that the claimant had no neck tenderness on examination or limitations in her range of motion." *Id.* (citing AR 522). Similarly, the ALJ observed that "the majority of the claimant's musculoskeletal examinations have been normal, which is not consistent with Dr. Heart's overly restrictive findings." *Id.* Plaintiff contends that the ALJ failed to credit treatment records which show tenderness and muscle spasm in her neck, back and left shoulder (ECF 19 at 12 (citing AR 380; AR 444)), but a review the records Plaintiff cites undermines her argument. The first record that Plaintiff cites shows that Plaintiff's neck exam results were "normal," but she had a "muscle spasm" and "tenderness" in her spine. AR 380. This record provides little support to Plaintiff's argument because the ALJ did not reject Dr. Heart's back pain related limitations and assigned "significant weight to Dr. Heart's standing, lifting, carrying and postural limitations." AR 24. Plaintiff also cites notes from a chiropractor reflecting neck, back and shoulder pain; however, subsequent records show that Plaintiff's pain improved with treatment. AR 444; AR 447; AR 448. Accordingly, the Court finds that substantial evidence supports the ALJ's rejection of Dr. Heart's findings regarding Plaintiff's neck pain and movement limitations.

### c. Plaintiff's Attendance Limitations

Dr. Heart also opined that Plaintiff is likely to miss more than four days of work per a month because of her impairments or treatment. AR 490. Although the ALJ acknowledged this

finding (AR 24), the ALJ failed to identify any specific reasons or evidence that supports giving this limitation little weight. Nor did the ALJ discuss elsewhere in her decision Plaintiff's ability to consistently attend work. Failing to address Plaintiff's attendance limitations is particularly significant for two reasons. First, the vocational expert testified that Plaintiff could not find work if she missed an average of four days of work in a month. AR 75. The ALJ's analysis of Dr. Heart's opinion on this issue thus has potential case dipositive consequences. Second, the ALJ did not acknowledge or address Dr. Kresser's and Dr. Kang's related findings that Plaintiff has moderate limitations in her ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances. AR 90; AR 105. While Dr. Kresser and Dr. Kang do not quantify how many days of work Plaintiff is likely to miss, their findings provide a further reason why the ALJ should have addressed Plaintiff's attendance limitations when determining her residual functional capacity. Based on the ALJ's failure to address these physician opinions and the medical evidence regarding Plaintiff's ability to consistently attend work, the Court finds that substantial evidence does not support the ALJ's opinion to give Dr. Heart's opinion little weight.

If credited, Dr. Heart's opinion would establish that Plaintiff cannot obtain gainful employment. Accordingly, the ALJ's failure to address that finding is not harmless. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006) ("[A] reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.").

### 4. The ALJ's Partial Rejection of Dr. Kresser's and Dr. Kang's Opinions

In describing Dr. Kresser's and Dr. Kang's findings, the ALJ stated that these doctors only opine that Plaintiff has "moderate limitations in her concentration, persistence, and pace." AR 23. This finding failed to acknowledge at least two other areas of mental functioning where Dr. Kresser and Dr. Kang found that Plaintiff has moderate limitations: (1) the ability to carry out detailed instructions; and (2) the ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances. AR 90–91; AR 101; AR 105–06.

11

#### a. Plaintiff's Concentration Limitations

Plaintiff argues that the ALJ improperly gave little weight to Dr. Kresser's and Dr. Kang's findings regarding her concentration, persistence and pace abilities. ECF 19 at 12. The ALJ based her determination on two findings. First, the ALJ noted that these limitations are "not consistent with the objective medical evidence of record showing the claimant to have normal attention." AR 24. Second, the ALJ found that they were also inconsistent with the medical record, which "show[s] almost no specialized mental health treatment." *Id.* Plaintiff argues that the ALJ "cited no objective evidence which is actually inconsistent with" Dr. Kresser's and Dr. Kang's opinion that Plaintiff's concentration abilities limit her to unskilled work. *Id.* at 13. As discussed above (Section III(A)(3)(a), *supra*), the ALJ evaluated the evidence regarding Plaintiff's attention and concentration abilities under Step 3. Substantial evidence in the record supports the ALJ's determination that Plaintiff has mild limitations regarding her attention and concentration abilities. AR 330; AR 333; AR 477; AR 506. As a result, substantial evidence also supports the ALJ's decision that Dr. Kresser's and Dr. Kang's opinions regarding Plaintiff's concentration, persistence and pace are "not consistent with the objective medical evidence in the record." AR 24.

#### b. Plaintiff's Other Mental Functioning Limitations

The ALJ's decision is silent as to at least two of the moderate limitations that Dr. Kresser and Dr. Kang identified. In particular, the ALJ failed to acknowledge Dr. Kresser's and Dr. Kang's findings that Plaintiff has moderate limitations in her ability to (1) carry out detailed instructions; and (2) perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances. AR 90–91; AR 101; AR 105–06. The ALJ thus failed to identify any reasons or evidence that support her decision to give these limitations little weight. As noted above (Section III(A)(3)(c), *supra*), the ALJ's failure to address Dr. Heart's finding that Plaintiff would miss more than four days of work per a month goes directly to Plaintiff's ability to find work, and thus, the ALJ's error is not harmless. *See Stout*, 454 F.3d at 1056. Accordingly, the Court finds that substantial evidence does not support the ALJ's decision to give Dr. Kresser's and Dr. Kang's opinions little weight.

### B. Plaintiff's Testimony

Plaintiff testified regarding symptoms related to both her physical impairments, such as her irritable bowel syndrome, and her mental impairments. AR 21–22. The ALJ concluded that Plaintiff's "subjective complaints are simply not consistent with her conservative treatment, medical record, work history, and activities of daily living." AR 22. On appeal, Plaintiff generally contends that the ALJ errored by failing to credit her testimony. ECF 19 at 14–16. Plaintiff first argues that the ALJ improperly considered her lack of medical treatment regarding her mental impairments because she could not seek such treatment due to poverty. *Id.* at 15. Second, Plaintiff contends that the ALJ failed to cite any specific medical records that contradict her testimony regarding her limitations. *Id.* Third, Plaintiff argues that the ALJ improperly rejected her testimony based on her activities of daily living. *Id.* at 16.

#### 1. Legal Background

The ALJ is responsible for determining a plaintiff's credibility. *Andrews*, 53 F.3d at 1039. An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Ghanim*, 763 F.3d at 1163 (citation and internal quotation marks omitted). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives specific, clear and convincing reasons for the rejection." *Id.* (citation and internal quotation marks omitted). General findings are insufficient; rather, "the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas*, 278 F.3d at 958. In other words, the ALJ must identify the non-credible testimony and the evidence that undermines it. *Ghanim*, 763 F.3d at 1163 (citation and internal quotation marks omitted). Factors the ALJ may consider in making an adverse credibility determination include (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5)

testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Id.* at 958–59.

### 2. Analysis

The ALJ offered specific, clear and convincing reasons for discounting Plaintiff's testimony concerning her symptoms.

#### a. Plaintiff's Physical Symptoms

The ALJ found that Plaintiff's conservative treatment, medical records, work history and activities of daily living show that her complaints regarding her physical symptoms were not credible. AR 22. To support this conclusion, the ALJ provided several examples and noted that Plaintiff's "continuous normal examination findings undermine most of [her] subjective allegations." *Id.* For instance, the ALJ found that Plaintiff's complaints of daily stomachaches prevent her from concentrating and working were not credible based on Plaintiff's treatment notes, which show that her irritable bowel syndrome symptoms were mild and her anemia was controlled with medications. *Id.* (citing AR 344; AR 422; AR 435–37). The ALJ also discussed the treatment notes and statements by Plaintiff from seven different dates between August 14, 2014, and August 12, 2016. *Id.* These medical records reflect several instances where Plaintiff denied symptoms, reported that she could control symptoms with medication or that she had normal testing results. AR 297; AR 342; AR 422–23; AR 484; AR 494; AR 497; AR 577. Finally, the ALJ found that certain evidence is inconsistent with Plaintiff's testimony that she stopped working in July 2013 because of her irritable bowel syndrome symptoms. Specifically, the ALJ cited Plaintiff's treatment notes, which show she had mild irritable bowel syndrome symptoms at the time and her previous statement that she quit her job to return to school. *Id.* (citing AR 342; AR 388; AR 391). Together, this evidence sufficiently supports the ALJ's decision to discredit Plaintiff's testimony regarding her physical impairments and irritable bowel symptoms.

#### b. Plaintiff's Mental Symptoms

The ALJ also found that Plaintiff's testimony regarding the symptoms from her mental limitations contradicted her treatment notes as well as her activities of daily living. AR 22–23. First, contrary to Plaintiff's argument, the ALJ did cite specific medical records that are

14

inconsistent with Plaintiff's statements.[4] The ALJ identified five different treatment records from August 14, 2014, to March 27, 2015, which show that Plaintiff retained mental capabilities such as her attention, concentration and memory abilities. AR 22 (citing AR 297; AR 330; AR 333; AR 343; AR 494; AR 506). Second, the ALJ observed that Plaintiff's activities of daily living also demonstrate a level of functioning inconsistent with her testimony. AR 22–23. In particular, the ALJ noted Plaintiff's ability to care for her son and pets and stated that "caring for pets and others requires regular attention and some physical effort." AR 23; *see Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("[I]f a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities."). Third, the ALJ noted that Plaintiff's part-time work and daily job search "suggest that the claimant has the ability and motivation to return to work." AR 23 (citing AR 209; AR 256). These reasons, bolstered by specific citations to the medical record and previous statements by Plaintiff, provide sufficient support for the ALJ's decision to discredit Plaintiff's testimony regarding the symptoms from her mental impairments.

Plaintiff argues that the ALJ improperly considered her lack of medical treatment regarding her mental impairments when discrediting her testimony. ECF 19 at 15. While the ALJ's opinion does identify Plaintiff's conservative treatment as inconsistent with Plaintiff's testimony, the opinion does not expand on this statement or rely on her conservative treatment in the more detailed analysis that follows this general statement. This passing reference to a lack of mental health treatment appears to be incidental. By contrast, the ALJ provided a detailed discussion of the medical evidence and her activities of daily living. This analysis provides sufficient support for the ALJ's decision. As a result, the Court does not reach Plaintiff's allegations of poverty and their connection to Plaintiff's limited mental health treatment.

////

////

---

[4] The Court notes that Plaintiff's failure to identify which of Plaintiff's statements the ALJ allegedly failed to address hinders the Court's ability to analyze Plaintiff's argument. ECF 19 at 15.

15

In sum, the Court finds that the ALJ set forth valid reasons, supported by substantial evidence in the record, for discrediting Plaintiff's testimony regarding the severity of her symptoms. As a result, the Court finds that the ALJ properly evaluated the credibility of Plaintiff's subjective complaints and provided clear and convincing reasons for discounting Plaintiff's testimony concerning her physical and mental impairment symptoms.

### C. Plaintiff's Boyfriend's Testimony

Plaintiff contends that the ALJ improperly disregarded the testimony of her boyfriend, Phillip Lappin. ECF 19 at 16–18. The ALJ may consider testimony from lay witnesses such as Mr. Lappin because "friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition." *Dodrill v. Shalala*, 12 F.3d 915, 918–19 (9th Cir. 1993) (citation omitted). The ALJ may discount the testimony of lay witnesses provided that the ALJ "give[s] reasons that are germane to each witness." *Id.* at 919.

Like Plaintiff, Mr. Lappin testified that Plaintiff cannot sit, stand or focus for long periods of time, and her impairments affect her memory, concentration, understanding and ability to follow instructions and complete tasks. AR 232; AR 237. He further stated that Plaintiff suffers from neck pain, irritable bowel syndrome, anxiety, depression, frustration and mental exhaustion. AR 232; AR 236. In light of the ALJ's detailed analysis of Plaintiff's testimony discussed above in Section III(B), *supra*, the Court finds that the ALJ provided sufficient evidence to support her conclusion that Mr. Lappin's testimony is also "not consistent with the objective treatment notes of record or the claimant's conservative treatment." AR 25. Because of Mr. Lappin's testimony is similar to Plaintiff's, the ALJ's reasoning for rejecting Plaintiff's testimony applies equally to Mr. Lappin's testimony. And after analyzing the testimony of one witness, "the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). Accordingly, the ALJ properly supported her decision to discount Mr. Lappin's testimony. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting [the plaintiff's] own subjective complaints, and because [his wife's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her

16

testimony.").

**D. Disposition**

Plaintiff contends that remanding for the calculation and award of benefits is the proper remedy in this case. ECF 19 at 20–21. In response, the Commissioner argues that awarding benefits would be improper and that the proper course of action is to remand for further administrative proceedings. ECF 22 at 9–10.

The Social Security Act permits courts to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see also Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014). Remand is appropriate where the record does not clarify whether the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated. *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). However, "where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Id.* at 593 (citations omitted). When making this determination, the Ninth Circuit has recognized that district courts should apply the following three-part credit-as-true standard:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison*, 759 F.3d at 1020 (collecting cases). All three parts of the standard "must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits." *Id.*

As the Court outlined above (Section III(A)(3)(c), *supra*), the ALJ failed to analyze and provide sufficient reasons for rejecting Dr. Heart's opinion that Plaintiff is likely to miss more than four days of work per a month. AR 490. Likewise, the ALJ failed to address Dr. Kresser's and Dr. Kang's findings regarding Plaintiff's moderately limited ability (1) to carry out detailed instructions; and (2) perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances. AR 90–91; AR 105–06; *See* Section III(A)(4)(b), *supra*. Because Dr. Kresser and Dr. Kang do not quantify how many days of work Plaintiff is likely to

17

miss, the precise relationship between their findings and Dr. Heart's is unclear.  Accordingly, further administrative proceedings are necessary to determine the extent of Plaintiff's limitations regarding her ability to maintain a work schedule and her other mental functioning abilities.[5]  On remand, the ALJ is to also ensure that she addresses all of the moderate limitations identified by Dr. Kresser and Dr. Kang.  *See* p. 7, n.3, *supra*.  The Court therefore remands this matter for further administrative proceedings consistent with this opinion.

## IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Plaintiff's motion for summary judgment, **DENIES** the Commissioner's cross-motion for summary judgment and remands this matter for further administrative proceedings consistent with this opinion.

**SO ORDERED.**

Dated: August 16, 2019

SUSAN VAN KEULEN
United States Magistrate Judge

---

[5] Because the Court remands for further proceedings to allow the ALJ to further analyze the medical evidence, the Court does not reach Plaintiff's argument that the ALJ failed to support her analysis under Steps 4 and 5.  ECF 19 at 18–20.  Plaintiff's arguments rely on the Court agreeing that Plaintiff's mental impairments limit her to unskilled work.  *Id.* at 18.  Before the Court addresses this argument, the Court provides the ALJ an opportunity to make any necessary adjustments to her residual functional capacity analysis based on further consideration of Dr. Heart's, Dr. Kresser's and Dr. Kang's opinions.